## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.   23-CR-14030-CANNON/MAYNARD

**UNITED STATES OF AMERICA**

**v.**

**KEYON LEWIS,**

**Defendant.**

_____/

### GOVERNMENT'S FACTUAL PROFFER AND MEMORANDUM OF LAW
### IN SUPPORT OF REQUEST FOR DETENTION

The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits its factual proffer and memorandum of law in support of its motion to detain the defendant, Keyon Lewis ("Lewis"), pending his trial in the above-referenced matter.

### BACKGROUND

On July 13, 2023, a federal grand jury in the Southern District of Florida returned an indictment charging Lewis with distribution of a mixture and substance containing a detectable amount of fentanyl, the use of which resulted in the death of "D.C.", in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (Count One), and possession with intent to distribute a mixture and substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (Count Two).   (Doc. No. 1.)

On July 24, 2023, Lewis had his initial appearance, at which time the United States requested pretrial detention based on danger to the community and risk of flight.   Lewis' detention hearing is scheduled for July 31, 2023.

1

## STANDARD OF REVIEW

Under the Bail Reform Act, 18 U.S.C. § 3142, a defendant may be detained pending trial if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e).   A judicial officer's finding of dangerousness must be "supported by clear and convincing evidence," 18 U.S.C. § 3142(f)(2), while detention based on risk of flight must be proven by a preponderance of the evidence.   *United States v. King*, 849 F.2d 485, 489 (11th Cir. 1988).   When a "judicial officer finds that there is probable cause to believe" that a defendant committed one of the crimes listed in section 3142(e)(3), there is a presumption in favor of detention: "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]"   18 U.S.C. § 3142(e)(3).

"A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged.   Thus, when the government presents an indictment including charges listed in section 3142(e)(3), it has fulfilled its burden to establish the presumption in favor of detention."   *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *accord United States v. Hurtado*, 779 F.2d 1467, 1479 (11th Cir. 1985).[1]   The presumption in favor of detention "is not simply an evidentiary tool designed for the courts.   Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial."   *Stone*, 608 F.3d at 945.   "Regardless of whether the

---

[1] A rebuttal presumption is triggered in this case by virtue of Counts One and Two of the indictment because both offenses carry a maximum term of imprisonment of ten years or more as prescribed in the Controlled Substances Act.   *See* 18 U.S.C. § 3142(e)(3)(A).

presumption applies, the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community." *Id*. at 946; *accord King*, 849 F.2d at 488 ("[The] statutory presumption imposes only the burden of production on [the defendant] and does not shift the burden of persuasion concerning risk of flight and dangerousness.").

In determining whether the government has met its burden, the court must consider certain factors, including:

> (1) the nature and circumstances of the offense charged, including whether the offense . . . involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

> (2) the weight of the evidence against the person;

> (3) the history and characteristics of the person, including--

>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## FACTUAL PROFFER

The United States submits the following factual proffer in support of its request that Lewis be detained pending his trial:

3

On November 7, 2021, at approximately 12:51 a.m., "J.S." arrived at her home in Vero Beach, Florida, and found her husband, D.C., dead from an apparent overdose.   D.C. was 35 years old when he died.   He and J.S. shared one child together.   J.S. found D.C. slumped over in the kitchen.   J.S. immediately called 911 and stated that her husband was on the floor and appeared to be dead.   J.S. described D.C. as purple and cold and advised the dispatcher D.C. had a drug problem.

At approximately, 1:30 a.m., Indian River County Sheriff's Office ("IRCSO") Detectives Brandon Dean and Dylan Farinacci arrived at the scene.   D.C.'s body was still present and had not been moved when Detectives Dean and Farinacci arrived.   Detective Dean observed a light brown powdery substance in a plastic baggie, syringe, and spoon on the kitchen counter near D.C.'s body.   The light brown substance tested positive for, among other things, fentanyl.   The substance was tested by the Indian River Crime Laboratory.   A cellphone was also located on the kitchen counter near the fentanyl and drug paraphernalia.

Detective Dean interviewed J.S. at her residence.   J.S. explained that she last saw D.C. on November 5, 2021, before she left to spend the weekend in Plantation, Florida with a friend.   J.S. stated that D.C. had been drinking before she left "but not bad."   J.S. did not speak with D.C. on November 6, 2021, although she called him several times during the day.   J.S. left Plantation to come home at approximately 11:20 p.m., on November 6, 2021, because she had a bad feeling something was wrong with D.C.   J.S. advised that D.C. struggled with drug addiction.   J.S. explained that D.C. had overdosed in the past and tried to hide his drug use from her.   J.S. identified the cellphone on the kitchen counter as D.C.'s, and provided D.C.'s phone number and passcode.   J.S. also executed a written consent authorizing law enforcement to search D.C.'s cellphone.

As Detective Dean was searching D.C.'s cellphone, he located a text message exchange between D.C. and a person saved as "Greg Barber."   The text message exchange appears to be drug related and ended with a text from "Greg Barber" on November 5, 2021, at 8:51 p.m., saying "Come out."   D.C. and "Greg Barber" also had several phone conversations on November 5, 2021.

J.S. advised Detective Dean that she recognized the phone number associated with "Greg Barber" and explained that D.C. frequently changed the names of the contacts saved in his phone to hide them from her.

On November 7, 2021, at approximately 8:30 p.m., Detective Dean texted "Greg Barber" from D.C.'s cellphone and ordered drugs.   The following is a summary of the text message exchange:

| | |
|---|---|
| Detective Dean: | Yoo |
| "Greg Barber": | Yoo |
| Detective Dean: | Can u come thru |
| "Greg Barber": | Yea. |
| Detective Dean: | 100 how long? |
| "Greg Barber": | You still owe me 20 |

Detective Dean then engaged in a phone call with "Greg Barber" from D.C.'s cellphone. Shortly thereafter, the following text message exchange took place between Detective Dean (using D.C.'s cellphone) and "Greg Barber":

| | |
|---|---|
| Detective Dean: | Call me back |
| Detective Dean: | Can u hear me? |
| Detective Dean: | My phone fucked up |

5

| | |
|---|---|
| "Greg Barber": | You owe 20 |
| "Greg Barber": | I can come now |
| Detective Dean: | I got u on 120 |
| "Greg Barber": | Ok |
| "Greg Barber": | You gone be outside |
| Detective Dean: | Ya let me know when ur here |
| "Greg Barber": | I'm here |

At approximately 10:15 p.m., a black Chevrolet pickup truck turned onto D.C.'s street, at which time "Greg Barber" called D.C.'s phone.   Shortly thereafter, Detective Dean and IRCSO Sergeant Ryan Eggers initiated a traffic stop of the Chevrolet pickup.   The vehicle was driven by Lewis' girlfriend, Monet Wright ("Wright"), and Lewis was sitting in the front passenger's seat. The vehicle was registered to Wright.   Lewis does not have a valid driver's license.   Lewis and Wright were directed to exit the vehicle.   Lewis had a cellphone in his hand when he exited the vehicle.   Lewis was directed to place his cellphone on the truck.

After Lewis exited the vehicle, IRCSO Sergeant Greg Stanley observed two clear plastic baggies next to Lewis' feet.   Each baggie contained a light brown powdery substance.   The light brown powdery substance tested positive for, among other things, fentanyl.   The substance was tested by the Indian River Crime Laboratory.   The color and packaging of the drugs that were found next to Lewis' feet is consistent with the color and packaging of the drugs that were found next to D.C.'s body.

Detective Dean called the number for "Greg Barber" from D.C.'s cellphone, at which point the cellphone Lewis had in his hand when he exited the vehicle began to ring.   Detective Dean seized Lewis' cellphone as evidence.

According to the Indian River Crime Lab, the chemical makeup of the substance law enforcement seized from the kitchen counter when D.C.'s body was found on November 7, 2021, and the substance law enforcement seized when Lewis was arrested on November 7, 2021, are consistent with one another and could have come from the same batch.

On November 17, 2021, Detective Dean interviewed Phillip Due ("Due").   Due was one of D.C.'s coworkers and his contact information was stored in D.C.'s cellphone.   Due stated that he was with D.C. from about 8:00 p.m. until 9:00 p.m. on November 5, 2021.   Due advised that he arrived at D.C.'s residence at about 8:00 p.m. to hang out, at which point D.C. requested that they go to Applebee's to have dinner.   Due drove D.C. to the Applebee's on 20th Street in Vero Beach.   Due stated that he and D.C. ate at the bar, and that shortly before they left D.C. got up and walked outside for a few minutes, and then came back inside to pay the bill.   Due then drove D.C. home and dropped him off a little after 9:00 p.m.

Detective Dean obtained surveillance footage from the Applebee's.   The surveillance footage shows Due and D.C. walking into the Applebee's at 8:23 p.m.   D.C. is wearing the same outfit he was wearing when he was found dead inside his residence.    The surveillance footage also shows Due and D.C. sitting at the bar talking, until about 8:43 p.m., at which point D.C. takes his cellphone out and appears to send a text message.   **The text message exchange between D.C. and "Greg Barber" on November 5, 2021, started at 8:43 p.m.**   At 8:51 p.m., the surveillance footage shows D.C. get up and walk outside to the parking lot, which was right after "Greg Barber" texted him to "Come out."   As D.C. walked out of the frame of the surveillance camera, a black Chevrolet pickup truck (that looks just like the one Wright and Lewis were stopped in) can been seen entering the Applebee's parking lot.   Both the pickup truck and D.C. are out of view until the truck is seen exiting the Applebee's parking lot at 8:53 p.m.   D.C. can be seen walking back

inside the Applebee's at 8:54 p.m.   Due and D.C. both left the Applebee's at 9:00 p.m., which is also captured on the surveillance footage.

Detective Dean obtained a state search warrant for Lewis' cellphone, and law enforcement was able to extract some information from the device.   Notably, on September 29, 2021, D.C. texted Lewis stating that he needed "2 points.   I'm right off us 1 and 17th Street."   On September 30, 2021, D.C. again ordered "2 points" from Lewis during a separate text message exchange. These communications relate to an attempt by D.C. to purchase heroin or fentanyl from Lewis. The text message exchange between Lewis and D.C. from November 5, 2021, and Lewis and Detective Dean from November 7, 2021, were also located on Lewis' cellphone.

On January 30, 2022, the Chief Medical Examiner for Indian River County, Patricia A. Aronica, M.D., issued a report opining that D.C. died from "fentanyl and ethanol intoxication." The United States anticipates that Dr. Aronica will testify at trial that but for the presence of the fentanyl that was detected in D.C.'s system, D.C. would not have died, and that the amount of ethanol detected in D.C.'s blood was not enough to kill him but for the presence of the fentanyl. The United States has filed a Notice of Expert Testimony for Dr. Aronica, which includes a copy of the report she prepared regarding D.C.'s cause of death.   (Doc. No. 13.)

Lewis has prior felony convictions from the State of Florida for battery by a detainee against staff (2015),[2] and misdemeanor convictions for reckless driving (2021), driving on a suspended license (2021), battery (2017), and resisting arrest (2015).

---

[2] Lewis was released from prison in November 2019, after serving approximately three years for these offenses.

## CONCLUSION

Based on the foregoing, the United States respectfully submits there is no condition or combination of conditions that will reasonably assure Lewis' appearance as required or the safety of any other person and the community.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:    **/s/Michael D. Porter**
Michael D. Porter
Assistant United States Attorney
Florida Bar# 0031149
101 South U.S. Highway 1
Suite 3100
Fort Pierce, Florida 34950
Telephone: (772) 293-0950
Email:michael.porter2@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.   All other parties will be served by either regular U.S. mail or inter-office delivery.

**/s/Michael D. Porter**
Michael D. Porter
Assistant United States Attorney